542 So.2d 834 (1989)
Harold O. AGUILLARD, Plaintiff-Appellee,
v.
Joshua G. FRANK, Sr. and Old Hickory Casualty Company, Defendants-Appellants.
No. 88-83.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
Pucheu & Pucheu (Michael Robinson), Eunice, for plaintiff-appellee.
Onebane, Donohoe, etc (Mark L. Riley), Lafayette, for defendant-appellant.
Jeansonne & Briney (Marcy C. Chappuis, Katherine Loos), Lafayette, for defendant-appellee.
Before GUIDRY, STOKER and KING, JJ.
STOKER, Judge.
This appeal arises out of a suit for damages filed by the plaintiff, Harold O. Aguillard, against the defendants, Joshua G. Frank, Sr. (Reverend Frank), and his insurer, Old Hickory Casualty Company (Old Hickory).
On the morning of September 26, 1986, as plaintiff was traveling in a westerly direction on East Laurel Avenue (U.S. Highway 190) in the City of Eunice, St. Landry Parish, Reverend Frank entered East Laurel Avenue, from a private parking lot located south of the eastbound lanes, heading in a westerly direction. Reverend Frank crossed the two eastbound lanes of the road and stopped as he entered the southernmost westbound lane when he saw plaintiff's pickup truck approaching. Plaintiff braked his vehicle and swerved to *835 avoid defendant's vehicle which caused him to lose control of his truck. Plaintiff struck a commercial sign belonging to Harry Smith's True Value Hardware which was located adjacent to the northernmost westbound lane of East Laurel.
Plaintiff filed suit to recover his property damages, medical expenses and damages for pain and suffering as a result of Reverend Frank's alleged negligence. Defendants answered plaintiff's suit asserting that the collision was the result of plaintiff's own negligence in, among other things, speeding and failing to maintain control of his vehicle. Hartford Insurance Company (Hartford), the insurer of Harry Smith's True Value Hardware, intervened in the suit seeking recovery for amounts that it paid to its insured for repairs to its sign which plaintiff struck.[1]
After trial on the merits, the trial court awarded judgment in favor of the plaintiff in the amount of $6,209.91[2] and in favor of the intervenor, Hartford, in the amount of $4,769.57. It is from this judgment that defendants have appealed. Plaintiff answered the appeal seeking an increase in the amount of general damages awarded. Hartford also answered the appeal seeking maintenance of the judgment in its favor. The issues presented in this appeal are (1) whether plaintiff was traveling at an excessive rate of speed which caused or contributed to the accident, and (2) whether the $1,000 award of general damages was excessive.

PLAINTIFF'S NEGLIGENCE
Defendants argue that the trial court erred in failing to find that the plaintiff was negligent because the defendants failed to establish that the plaintiff was traveling at a speed significantly in excess of the posted speed limit. The trial court, in oral reasons, stated:
"I'm not going to say that Mr. Aguillard may not have been going over 35 miles per hour. Again for him to have been cause of the accident, it would have had to have been a significant amount... if he were going 40 miles an hour, I still can't say that I would deem that sufficient cause of the accident because an intervening vehicle into the main traveled area of the highway would to me supersede any negligence, and I wouldn't call that negligence, traveling at 40, would have to be established to be at least 50 or in excess. Now, I understand that there was testimony from the three (3) witnesses provided by defendant indicating that it was 50 miles per hour, but there was no foundation laid by any of these witnesses to indicate to the Court that this was in fact a scientific measurement... only an estimation, and while the Court certainly feels that these gentlemen are in a position to say that they feel a car may have been going in excess of the speed limit, for it to take the form of proof by preponderance of evidence, it would have to be relative to some standard, i.e., other cars going down the highway traveling at a safe rate of speed, how much faster he was going, and none of this type of evidence was offered. So the Court again cannot draw any inference from those statements as to exactly what speed they were actually traveling. I don't think this was any malicious attempt on the part of the Reverend, I think it was just a matter of not judging the distance accurately, and if Mr. Aguillard was going a little bit fast maybe not realizing the actual speed that he was going, but the eye witnesses that actually saw the accident indicate that he was at least a little bit over the line, and that the maneuver by Mr. Aguillard was strictly an avoidance maneuver performed at the point in time that Mr. Aguillard noticed the Reverend's car entering the highway."
The trial court's findings of fact are to be accorded great weight on review and *836 may not be disturbed absent a finding that they are manifestly erroneous. Canter v. Koehring, 283 So.2d 716 (La.1973). The burden of proving circumstances, such as speed, which caused or contributed to the accident is on the driver intruding into a favored street in violation of LSA-R.S. 32:124. Davis v. Galilee Baptist Church, 486 So.2d 1021 (La.App. 2d Cir.1986).
The defendants attempted to establish at trial that the plaintiff was traveling at an excessive rate of speed which resulted in his failure to maintain control of his vehicle. Thus, defendants contend, it was plaintiff's speeding and failure to maintain control which caused or contributed to the collision. Plaintiff testified that he was traveling at 35 miles per hour and was sure of that because he had his cruise control on. The only eyewitness to the accident, Lionel Fontenot, testified that he was at the intersection of East Laurel and South Cane waiting for traffic to pass so that he could cross East Laurel. He testified that Reverend Frank pulled out onto East Laurel blocking the eastbound lanes and crossing over the centerline into the westbound lanes. He estimated that plaintiff's truck was about 90 feet away and stated that plaintiff braked to avoid hitting Reverend Frank's vehicle which had stopped at that point. Mr. Fontenot testified that he could not estimate plaintiff's speed. The investigating officer, Danny Williamson, testified that he did not attempt to estimate plaintiff's speed. He did not make the determination that speed was a factor in the cause of the accident because he was not qualified to do so. Officer Williamson also testified that he measured skid marks from plaintiff's vehicle of 225 feet.
Reverend Frank testified that plaintiff was going at least 50 miles per hour on East Laurel. Three other persons called by defendants each testified that from some vantage point they had seen plaintiff's truck traveling at an excessive rate of speed prior to the accident. Two of those witnesses estimated plaintiff's speed to have been at least 50 miles per hour. These witnesses did not give this information to Officer Williamson at the time of the accident, rather they volunteered the information to Reverend Frank's daughter. One of the witnesses worked for defendant's daughter, another was a friend of defendant's daughter and a member of Reverend Frank's congregation.
Defendants argue that, based upon the witnesses' testimony, the length of the skid marks, the physical damage to the truck and the fact that plaintiff was able to avoid colliding with Reverend Frank's vehicle, plaintiff was negligent and either solely at fault or substantially at fault in causing the collision.
The trial court did not find as a fact that plaintiff was not exceeding the speed limit, however, it concluded that though plaintiff may have exceeded the speed limit, his speed was not excessive and was not a proximate cause of the accident. The trial court was unable to draw any inference of excessive speed which contributed to the accident from the skid marks or the testimony of defendants' witnesses.
While excessive speed or speed exceeding the lawful limit is a violation of the law, it is not necessarily a proximate or contributing cause of every accident. It must be shown that such speed has a causal connection with the accident. Smith v. Aetna Casualty and Surety Company, 128 So.2d 235 (La.App. 2d Cir.1961). "Physical damage alone, unsupported by any competent testimony to relate the extent of the damage to the speed of the vehicle, does not support a presumption that the damaged vehicle was speeding." Barrois v. Noto, 215 So.2d 676, 682 (La. App. 4th Cir.1968), writs refused, 253 La. 301, 217 So.2d 406, 253 La. 322, 414 (La. 1968). The length of skidding, is not, in and of itself, indicative of excessive speed. Lucas v. Broussard, 197 So.2d 696 (La. App. 4th Cir.1967). Where there is a conflict in testimony, the trial court's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed. Canter v. Koehring, supra.
The trial court, while finding defendants' witnesses competent to testify as to speed of a vehicle, did not assign any weight to their testimony concerning estimations *837 of plaintiff's speed. This is an evaluation of credibility, which if reasonable, precludes this court from substituting its own evaluation of credibility. The trial court concluded that plaintiff was not traveling at an excessive rate of speed based upon the physical evidence, i.e. skid marks and physical damage to property. There was no testimony or evidence, expert or otherwise, adduced to relate these factors to speed. We cannot say that the trial court's reasonable evaluations of fact or credibility were manifestly erroneous.

DAMAGES
Defendants assert on appeal that the general damage award of $1,000 was excessive and an abuse of the trial court's discretion. Plaintiff answered the appeal seeking an increase in the amount awarded.
The medical report of Brian N. Heinen, M.D., was stipulated to at trial. Dr. Heinen examined plaintiff immediately after the accident because of plaintiff's recent cervical spine fusion. Dr. Heinen diagnosed plaintiff as suffering from (1) an acute ligamentous strain of the cervical spine; (2) a contusion over the left lateral neck and left ear; (3) an abrasion over the neck and left ear; and (4) an abrasion and swelling of the left medial calf. As of October 17, 1986 the plaintiff no longer had any complaints and was released from treatment by Dr. Heinen with no residual disability.
At trial, plaintiff testified that he was concerned after the accident about his recent fusion surgery, so he consulted Dr. Heinen immediately. He testified that after the accident, his whole left side hurt and that he had problems for about two weeks. Based upon this evidence and the testimony, the trial court awarded plaintiff $1,000 in general damages for pain and suffering. Defendants argue that this amount should be reduced to $600.
Plaintiff urges that the trial court abused its discretion in making an inadequate award of general damages and that the quantum should be increased. Plaintiff argues that the lowest reasonable award which the trial court should have made was $1,500.
In reviewing damage awards, it is the function of this court to only review the exercise of the trier of fact's discretion in the matter. "Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much discretion,' ... in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, ... or insufficient." (Citations and footnotes omitted) Reck v. Stevens, 373 So.2d 498, 501 (La. 1979).
In the case before us, the plaintiff, at the time of the accident, was a 59-year-old retired gentleman. He testified that he had had surgery on his back or neck every year from 1979 to 1986. All of the vertebra in his neck had been fused in a prior surgery. Plaintiff testified that he was very concerned about his neck after the accident, and the whole left side of his body hurt. These complaints resolved in two weeks.
While an award of $1,000 in general damages may be on the high side for this particular injury to this individual, we cannot say that the trial court abused its much discretion. We do not find that the damages awarded are excessive or inadequate.
Accordingly, the judgment appealed from is affirmed. The costs of this appeal are assessed to the defendants-appellees.
AFFIRMED.
NOTES
[1] Defendants answered the intervention and filed a reconventional demand and third party demand against plaintiff. This claim was not disposed of by the trial court and is not before us.
[2] Property damages in the amount of $4,916.91 and medical expenses in the amount of $293 were stipulated to. One thousand dollars in general damages was awarded.